<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEXANDER A. HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>HUDSON COUNTY *et al.*,<br><br>    Defendants. | No. 22cv6729 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Alexander A. Harris, a pretrial detainee at Hudson County Correctional Center, brings this action under 42 U.S.C. § 1983 against Defendants Hudson County, the Hudson County Correctional Center, individual corrections officers, supervisory officials, and a private medical contractor. D.E. 44 ("Amended Complaint" or "FAC"). The Amended Complaint alleges deliberate indifference to serious medical needs, excessive force, retaliation, denial of access to courts, procedural due process violations, failure to protect, municipal liability, and supervisory liability. *See* FAC. Plaintiff proceeds *in forma pauperis*. D.E. 6. The Court previously appointed *pro bono* counsel for the limited purpose of filing a consolidated amended pleading, which is now the operative Amended Complaint. *See* D.Es. 6, 35, 42. Because Plaintiff proceeds *in forma pauperis*, the Court must screen the Amended Complaint under 28 U.S.C. § 1915(e)(2)(B).

For the reasons below, the Court will **DISMISS** the Hudson County Correctional Center as a non-suable entity and **DISMISS in part** Plaintiff's procedural due process claim. All remaining counts survive screening and **PROCEED** to service.

I.    BACKGROUND

Plaintiff was a pretrial detainee housed at the Hudson County Correctional Center.  FAC ¶ 2.  The Amended Complaint names as Defendants: Hudson County, the Correctional Center, supervisory and line corrections staff, the facility's private medical contractor, Wellpath, LLC, and several Wellpath, LLC employees.  *Id.* ¶¶ 5–33.

Plaintiff alleges that he suffers from serious medical conditions, including complications from an ileostomy and hypertension, that require ongoing specialist care and surgical intervention.  *Id.* ¶¶ 38–39.  According to the Amended Complaint, outside physicians repeatedly recommended corrective surgery, yet the procedure has not been scheduled or authorized despite years of follow-up evaluations.  *Id.* ¶¶ 40–43.  Plaintiff alleges that consultations at Jersey City Medical Center, St. Michael's Medical Center, and University Hospital confirmed the need for surgical treatment.  *Id.* ¶¶ 42–43.  He contends that the delay has caused ongoing pain, infection, and deterioration of his condition.  *Id.* ¶¶ 41–43.

The Amended Complaint also recounts several on-site incidents.  On February 8, 2022, Plaintiff alleges he experienced a mental-health episode but was handcuffed and placed in lockup, rather than promptly treated.  *Id.* ¶ 44.  On March 3, 2023, after officers deployed pepper spray in his housing unit, Plaintiff alleges that a corrections officer slammed a cell door on his leg and later on his head, resulting in injury.  *Id.* ¶¶ 48–53.  On January 12, 2024, Plaintiff alleges that he was pepper-sprayed after requesting notary services, denied timely decontamination, left unattended while experiencing breathing difficulties, and later sustained a head injury and brain bleed.  *Id.* ¶¶ 52–53.

Plaintiff further alleges repeated episodes of chest pain and delayed medical responses.  *Id.* ¶¶ 49–51.  In September 2024, following a catheterization at University Hospital, he contends that

2

facility staff failed to return him for timely catheter removal, resulting in infection.  *Id.* ¶ 56.

Beyond medical care, Plaintiff asserts that staff retaliated against him for filing grievances and pursuing legal claims by revoking inmate job assignments, restricting law-library access, and confiscating his legal materials.  *Id.* ¶¶ 58–61.  He also alleges that another inmate, Shamir Blunt, threatened his safety and that prison staff failed to investigate or implement protective measures.  *Id.* ¶¶ 54, 118.

Based on these allegations, Plaintiff asserts claims for deliberate indifference to serious medical needs, excessive force, retaliation, denial of access to courts, procedural due process violations, failure to protect, municipal liability, and supervisory liability.  *See id.* ¶¶ 124– 132.  The Court recounts these allegations as pled and addresses each claim in turn under the screening standard of 28 U.S.C. § 1915(e)(2)(B).

## II.    LEGAL STANDARD

A court must dismiss an *in forma pauperis* complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune.  28 U.S.C. § 1915(e)(2)(B).  When screening a complaint prepared and filed by counsel pursuant to a court order, the Court's review concentrates on legal sufficiency under Rule 8 and the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Factual disputes and affirmative defenses—including exhaustion under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104–34, 110 Stat. 1321 (1996)—are ordinarily resolved after service, unless dismissal is plainly required on the face of the pleading.  The Court therefore dismisses claims that are legally deficient on their face but permits plausible claims to proceed.

### III.    ANALYSIS

The Amended Complaint asserts the following counts pursuant to 42 U.S.C. § 1983: Count One for Deliberate Indifference to Serious Medical Needs; Count Two for Excessive Force; Count Three for First Amendment Retaliation; Count Four for Denial of Access to Courts; Count Five for Procedural Due Process; Count Six for Failure to Protect / Deliberate Indifference to Safety; Count Seven for Municipal Liability (*Monell*); and Count Eight for Supervisory Liability.  FAC ¶¶ 68–143.  The Court addresses each count in turn.

Although the Amended Complaint frequently lists multiple defendants in the heading of particular counts, the Court evaluates liability under § 1983 based on the factual allegations describing each defendant's conduct.  The mere inclusion of a defendant's name in the caption or heading of a claim, without supporting factual allegations demonstrating that defendant's personal involvement in the alleged constitutional violation, is insufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 676–78; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Accordingly, where the Amended Complaint fails to sufficiently allege facts tying a particular defendant to the conduct underlying a given count, the Court dismisses that claim as to that defendant for lack of plausible personal involvement.

### A.    Count One: Deliberate Indifference to Serious Medical Needs

Count One alleges that Defendants delayed or denied necessary medical treatment for serious conditions, including repeated episodes of chest pain and other urgent symptoms.  FAC ¶¶ 1–2, 38–46.  Because the alleged conduct occurred while Plaintiff was a pretrial detainee, the claim is governed by the Due Process Clause of the Fourteenth Amendment.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To survive screening, Plaintiff must allege a serious medical need and plead facts showing that defendants acted with deliberate indifference or otherwise in a

manner not rationally related to a legitimate governmental objective.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (addressing standards for pretrial detainees).

The Amended Complaint identifies discrete incidents, asserts the nature of Plaintiff's symptoms, and alleges specific defendants who delayed or denied Plaintiff care.  FAC ¶¶ 38–44, 55–62.  Those allegations are sufficient, at screening, to state a plausible Fourteenth Amendment claim against the individual defendants alleged to have been personally involved.  Count One will therefore **PROCEED** against Emilio Bonnetti, Victor A. Peralta, and Troy E. Powell, because the Amended Complaint pleads medical delays and denials tied to those actors.  *See Hubbard*, 399 F.3d at 166; FAC ¶¶ 38–46, 55–62.

### B.    Count Two: Excessive Force

Count Two alleges that certain correctional officers used force against Plaintiff that was objectively unreasonable under the circumstances.  Again, because Plaintiff was a pretrial detainee at the time of the alleged incidents, the claim arises under the Due Process Clause of the Fourteenth Amendment and is governed by the objective-reasonableness standard set forth in *Kingsley*.  576 U.S. at 398.  The inquiry is whether the force was used deliberately and whether it was objectively unreasonable in light of the facts and circumstances confronting the officer.  *Id*. at 396–97.  Relevant considerations include the relationship between the need for force and the amount used, the extent of the injury, any effort made to temper the response, the severity of the security problem at issue, the threat reasonably perceived, and whether the detainee was actively resisting.  *Id*. at 397.

The Amended Complaint pleads several discrete episodes of excessive force.  Plaintiff alleges that he was pepper-sprayed after requesting notarization of legal papers; that he was denied timely decontamination and required to remain in contaminated clothing; that an officer slammed

5

a cell door on his leg during a medical episode and later closed a door on his head after he collapsed; that he was pepper-sprayed again while in distress; and that other officers physically dragged or roughly handled him.  FAC ¶¶ 79–86.  He alleges resulting injuries including bruising, respiratory distress, loss of consciousness, and a brain bleed.  *Id.*

Accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, the pleading describes force allegedly used in response to requests for medical or legal assistance rather than to restore order in the face of an immediate disturbance.  The Amended Complaint further alleges force applied after Plaintiff was restrained, incapacitated, or otherwise not posing an active threat.  *Id.*  At this stage, the Court cannot conclude that the degree of force alleged was objectively reasonable as a matter of law.

Defendants may ultimately assert that institutional security concerns justified their actions.  But such defenses require factual development beyond the face of the Amended Complaint.  The allegations, as pleaded, state a plausible Fourteenth Amendment excessive force claim.  Count Two will therefore **PROCEED** against Emilio Bonnetti, Cherry A. Woodley, Rene Martinez, and Paul A. Puring, because the Amended Complaint identifies these officers as participants in the pepper-spraying, door-closure, and related force incidents.  *Kingsley*, 576 U.S. at 396–98; *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); FAC ¶¶ 48–53, 79–86.

### C.    Count Three: First Amendment Retaliation, § 1983

Count Three sounds in First Amendment retaliation.  To state a retaliation claim under the First Amendment, a plaintiff must allege that (1) he engaged in constitutionally protected conduct, (2) he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his rights, and (3) the protected conduct was a substantial or motivating factor in the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001).

The Amended Complaint alleges that Plaintiff filed grievances, sought notarial services, requested legal materials, and pursued court filings—all protected conduct. FAC ¶¶ 87–94. It further alleges adverse actions including revocation of law-library access, termination from inmate job assignments, confiscation of discovery materials, issuance of disciplinary charges, and use of force temporally connected to his requests for legal services. *Id.* Plaintiff also alleges that these actions followed or were triggered by his protected activity and were undertaken to silence or punish him. *Id.* ¶¶ 90–92.

At the screening stage, those factual allegations are sufficient to plausibly support the inference that Plaintiff's protected conduct was a substantial or motivating factor in at least some of the adverse actions alleged. The Court therefore cannot conclude that the retaliation claim fails as a matter of law on the face of the pleading. Count Three will therefore **PROCEED** against Emilio Bonnetti, Cherry Anne Woodley, Victor A. Peralta, Peter Paul A. Puring, Samet Vener, and Rene Martinez, because the Amended Complaint links those supervisory and line staff individuals to alleged adverse acts taken after Plaintiff engaged in protected conduct. *See Rauser*, 241 F.3d at 333–34; FAC ¶¶ 72–78, 87–94.

### D.    Count Four: Denial of Access to Courts

Plaintiff alleges interference with legal materials, restricted law-library access, and consequent prejudice to investigations and litigation he is pursuing. FAC ¶¶ 60, 95–103 (discussing "confiscated legal materials," restricted law library access, and prejudice to ongoing litigation). To state an access-to-courts claim, a plaintiff must allege an actual injury—that the asserted deprivation caused actionable prejudice to a nonfrivolous legal claim or impeded the litigation of a concrete case. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

The Amended Complaint alleges concrete examples of lost legal materials and attendant

7

prejudice to Plaintiff's efforts to pursue legal claims. *Id.* ¶¶ 73–77 (describing seized flash drives containing criminal discovery and alleged litigation prejudice). Count Four will therefore **PROCEED** against Cherry Anne Woodley and Rene Martinez, because the Amended Complaint specifically alleges those staff members seized legal materials and enforced law-library restrictions that caused prejudice to Plaintiff's litigation efforts. *See Monroe*, 536 F.3d at 205; FAC ¶¶ 60, 73–77, 95–103.

### E.    Count Five: Procedural Due Process, § 1983

Count Five asserts procedural due process claims. FAC ¶¶ 104–12. Procedural due process claims require a threshold showing that the plaintiff was deprived of a protected liberty or property interest; only then do the procedural protections described in *Wolff v. McDonnell*, and related authority, attach. *See* 418 U.S. 539, 554 (1974); *see also Sandin v. Conner*, 515 U.S. 472, 477–79 (1995). *Sandin* imparts that a state-created liberty interest exists only when the deprivation imposes an "atypical and significant hardship" in relation to the ordinary incidents of prison life; routine or short-lived restraints and the mere loss of privileges do not themselves give rise to a protected liberty interest. *See* 515 U.S. at 483–86.

Applying those principles to the Amended Complaint, Plaintiff alleges a mixture of harms. Some allegations—loss of job assignments and intermittent law-library restrictions—are the type of adverse-but-ordinary deprivations that, standing alone, typically do not implicate a *Sandin* liberty interest. *See id.* at 484–86. Other allegations, however, describe formal disciplinary sanctions (placement in isolated lockup, repeated suspensions of privileges, and threatened or imposed loss of recreation) and, together with allegations that grievances were treated as disciplinary infractions, state a claim that Plaintiff was repeatedly denied notice or a meaningful opportunity to be heard. *See* FAC ¶¶ 60–66, 104–12. Those latter allegations, if credited, could

plausibly describe punishments of a kind or duration that give rise to a liberty interest and would therefore trigger *Wolff*-type procedural protections. *See Wolff*, 418 U.S. at 563–71; *Sandin*, 515 U.S. at 486.

Accordingly, Count Five will be resolved as follows: To the extent the claim rests on routine or arbitrary removal from inmate jobs or short-term, undocumented limitations on law-library access, the Amended Complaint does not allege the deprivation of a protected liberty interest, and the Court will **DISMISS** that portion of Count Five ***without prejudice***. By contrast, the Amended Complaint plausibly alleges that certain formal disciplinary sanctions—such as extended isolation or lock-up, loss of recreation, and similar penalties—imposed an atypical and significant hardship without adequate notice or an opportunity to be heard. *See Sandin*, 515 U.S. 472. Count Five will therefore **PROCEED** against Bryan Williams, Emilio Bonnetti, and Samet Yener with respect to that subset of disciplinary sanctions. *See Wolff*, 418 U.S. at 563–71; *Sandin*, 515 U.S. at 484–86; FAC ¶¶ 57, 61, 104–12.

### F.    Count Six: Failure to Protect / Deliberate Indifference to Safety, § 1983

Count Six alleges the Defendants were deliberately indifferent to the risk that Plaintiff would suffer injury from violence at the hands of other inmates. FAC ¶¶ 113–23. Prison officials have a constitutional duty to protect detainees from violence at the hands of other inmates. *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025). For claims alleging a failure to protect, the Supreme Court's deliberate-indifference framework requires a showing that (1) the detainee was incarcerated under conditions posing a substantial risk of serious harm and (2) prison officials knew of and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 833–35 (1994). The Third Circuit has applied *Farmer*'s standard to failure-to-protect claims and has held that a plaintiff must allege facts showing the defendant's actual knowledge of a substantial

9

risk and deliberate indifference to that risk.  *See, e.g.*, *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

The Amended Complaint alleges repeated threats from identified inmates, a specific incident on June 25, 2024 in which an inmate threatened Plaintiff in the presence of staff, Plaintiff's multiple requests for reclassification or protection that were ignored, and the assignment or maintenance of violent inmates in proximity to Plaintiff despite notice of hostility.  *See* FAC ¶¶ 113–21.  Those factual allegations—if proven—would permit a reasonable factfinder to conclude that defendants knew of a substantial risk to Plaintiff's safety and failed to take reasonable steps to abate it.  *See Farmer*, 511 U.S. at 834–37.  Construed generously at the screening stage, those allegations are sufficient to state a plausible Fourteenth Amendment failure-to-protect claim against the individual defendants plausibly connected to the housing, classification, and protective-custody decisions described in the Amended Complaint.  Count Six will therefore **PROCEED** against Troy E. Powell because the Amended Complaint plausibly alleges he knew of and disregarded a substantial risk to Plaintiff's safety.  *See Farmer*, 511 U.S. at 834–37; FAC ¶¶ 54, 113–23.

### G.   Count Seven: Municipal Liability (*Monell*)

Count Seven asserts municipal liability against Hudson County and Wellpath under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), on theories of policy, custom, and ratification.[1]  FAC ¶¶ 124-32.  To state a *Monell* claim, a plaintiff must plead that a municipal policy or persistent custom caused the constitutional injury.  *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694).  The Amended

---

[1] Private medical contractors providing services in correctional facilities may be liable under 42 U.S.C. § 1983 for constitutional violations caused by their policies or customs. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003); *West v. Atkins*, 487 U.S. 42, 54–57 (1988); *Monell*, 436 U.S at 694.

10

Complaint alleges systemic deficiencies, recurring incidents, and policies or practices that allegedly produced the constitutional violations. FAC ¶¶ 124-32 (alleging recurring practices, systemic failures, and policies or customs causing constitutional violations). Taken as true for screening, those allegations permit a plausible *Monell* claim to proceed at this stage. *See Monell* , 436 U.S. at 690–94; *Estate of Roman*, 914 F.3d at 798.

Accordingly, Count Seven survives screening as to Hudson County and Wellpath and will **PROCEED**. To the extent Count Seven attempts to hold Hudson County Correctional Center itself liable as a separate municipal entity, that portion of Count Seven is **DISMISSED** *with prejudice* because a correctional facility that is merely an administrative unit is not amenable to suit as a "person" under § 1983. *Almonte v. United States*, No. 17-5427, 2018 WL 3492146, at *3 (D.N.J. July 19, 2018) ("From the outset, the Hudson County Correctional Facility is not a proper defendant in this § 1983 action, because it is not a "person.") (additional citations omitted).

### H.  Count Eight: Supervisory Liability

Count Eight alleges supervisory liability based on notice of subordinate misconduct and a failure to train, supervise, or discipline. FAC ¶¶ 133–143. Supervisory liability requires more than conclusory allegations of notice; it requires facts indicating that supervisors knew of a pervasive pattern of unconstitutional conduct and were deliberately indifferent to that misconduct. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *Iqbal*, 556 U.S. at 676. The Amended Complaint identifies supervisory actors, alleges notice through recurring incidents and grievances, and describes failures to act. FAC ¶¶ 13–22, 133–43. At screening, the allegations are sufficiently particular against Emilio Bonnetti, Cherry Anne Woodley, and Victor A. Peralta—because the Amended Complaint alleges these supervisors had notice of recurring incidents and failed to take corrective action. *See Iqbal*, 556 U.S. at

11

676; *A.M. ex rel. J.M.K.*, 372 F.3d at 586; *Rode*, 845 F.2d at 1207; FAC ¶¶ 133–43. Count Eight therefore survives screening against those Defendants and will **PROCEED**.

## IV. ADDITIONAL SCREENING ISSUES

### A. Proper Parties and Capacity

The Amended Complaint names "HUDSON COUNTY CORRECTIONAL CENTER" as a Defendant. *See* FAC ¶¶ 10–12. As noted above, a correctional facility that functions only as an administrative unit or building is not a "person" for purposes of § 1983. *See Almonte*, 2018 WL 3492146, at *3. The Court **DISMISSES** any claim asserted against HUDSON COUNTY CORRECTIONAL CENTER as non-cognizable. Claims against Hudson County remain for screening purposes.

### B. PLRA Exhaustion and Timeliness

Exhaustion under the PLRA is an affirmative defense; dismissal for failure to exhaust is appropriate only where non-exhaustion is clear on the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding failure to exhaust under the Prison Litigation Reform Act is an affirmative defense and dismissal is appropriate only where non-exhaustion appears on the face of the complaint). The Amended Complaint, filed by counsel after the Court's directive to consolidate claims, does not plainly demonstrate non-exhaustion. The Court therefore declines to dismiss any claim on exhaustion grounds at screening. Defendants may assert exhaustion and timeliness defenses in motions or in their answer.

### C. Pseudonym Defendants

The Federal Rules of Civil Procedure do not prohibit the use of fictitious names where a plaintiff, prior to discovery, cannot identify certain defendants. *See* Fed. R. Civ. P. 10(a). Courts within this District routinely permit the temporary use of "John Doe" designations so long as the

complaint describes the unidentified individuals with sufficient specificity to permit later identification through discovery. *See, e.g.*, *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 534 (D.N.J. 2000). The Court will therefore **PERMIT** the John Doe defendants to remain at this stage. Plaintiff shall, through discovery, seek to identify those Defendants and move to amend as appropriate.

## V.     CONCLUSION

For the foregoing reasons, any claim against HUDSON COUNTY CORRECTIONAL CENTER is **DISMISSED** *with prejudice*. Count Five is **DISMISSED** *without prejudice* to the extent it is predicated on routine or short-term restrictions that do not implicate a protected liberty interest; it otherwise may **PROCEED** as set forth above. Counts One, Two, Three, Four, Six, Seven (as against Hudson County only), and Eight survive screening under 28 U.S.C. § 1915(e)(2)(B) and will **PROCEED** for service.

An appropriate Order follows.

Dated: April 10, 2026

_Evelyn Padin_
Evelyn Padin, U.S.D.J.

13